IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ALEXIS MADERA PADILLA
Plaintiff

vs

COMMISSIONER OF SOCIAL SECURITY
Defendant

CIVIL 15-2343CCC

**ORDER**

Claimant Alexis Madera Padilla applied for disability insurance benefits alleging disability due to high blood pressure and mental impairment. After a hearing held on December 16, 2013, the Administrative Law Judge (ALJ) rendered a decision finding (1) that claimant met the insured status requirement of the Social Security Administration through December 31, 2017, (2) that he has not engaged in substantial gainful activity since August 10, 2011, (3) that the medical evidence established severe impairments consisting of a major depressive disorder and generalized anxiety disorder with features of a panic disorder, (4) that the severity of claimant's mental impairment, considered singly and in combination, do not medically equal the criteria of listing 12.04 and (5) that "claimant is limited to performing unskilled tasks that are simple and repetitive, that do not involve contact with the public and involve working primarily with objects instead of interacting with people." Administrative Record (A.R.) (d.e. 10), page 20 of ALJ Decision.

Both the evidence and the application for disability benefits presented by claimant focuses primarily on a mental impairment alleged. The ALJ's Decision discusses plaintiff's medical history of a mental disorder commencing with his

treatment at the State Insurance Fund (SIF) years before the alleged onset date of August 10, 2011. He was diagnosed and treated at the SIF for a major depressive disorder until his discharge in May 2009. The medical evidence submitted covers (1) the treatment provided by claimant's psychiatrist Dr. Manuel Brignoni Román in 2011, starting on April 11, followed by monthly appointments from April 2011 through December 2011 and on January and February 2012,[1] the psychiatrist medical report completed by him in February 2012 as well as treatment notes of February 2013 and (2) treatment by psychologist Hector J. Marrero from December 2009 to May 2010, May thru July 2011, December 2011 and February 2012. Dr. Marrero issued a psychological medical report (Exhibit 6F) dated February 17, 2012 and also a Mental Residual Functional Capacity Assessment prepared in September 2013 (Exhibit 24F). The February 17, 2012 medical report was issued by Dr. Marrero at the request of the Social Security Disability Determination Program. The relevant answers to the questions contained therein reflect the following: (1) claimant was exposed as a correctional officer to more than 6 riots or fights between persons and began suffering panic attacks and receiving psychiatric treatment in the year 2003, (2) he evidenced psycho-motor retardation, slow flow of thought, (3) the content of thought was of a depressive nature, with mental blockings, psychological interferences, feelings of worthlessness with some indicators of recollection of traumatic experiences, classified as a high risk patient as to suicidal factors, oriented in person, place but having no orientation sometimes as to time, (4) immediate

---

[1] He prescribed medication as part of the treatment. He diagnosed severe recurrent major depression.

and short term memory partially impaired, (5) attention was diminished . . . had concentration, retention difficulties, (6) judgment was described as impulsive but partially impaired due to paranoid treatment, (7) poor ability to perform work on a timely basis, (8) lack of ability to cope with a schedule, follow detailed instructions, assumed increased mental demands and to adapt to stressful circumstances which were described by the psychologist as factors associated with competitive work.  The diagnosis reported by psychologist Marrero was generalized anxiety disorder with panic attacks and PTSD indicators.  The prognosis reported was "very poor laboral prognosis at present time." Dr. Marrero's opinion regarding claimant's ability to concentrate and complete a day's work was the following: "no doubt that at the present time Alexis does not possess the functional capacity to be in a competitive work setting and to complete a normal workday without interruption."  He further opined that claimant was "not gainfully employable."

Dr. Marrero prepared a Mental Residual Functional Capacity Assessment (Exhibit 24F) dated September 2015 in which he evaluated as moderately limited claimant's ability to understand and carry out simple instructions while he was markedly limited in his ability to understand and carry out detailed instructions.  He was classified markedly limited in the following:

- To maintain attention and concentration for extended periods;
- To perform activities within a schedule;
- Maintain regular attendance and be punctual;
- To work in coordination or proximity to others without being distracted;

- To complete a normal work day or work week without interruptions from psychologically based symptoms; and
- To perform at a constant pace without a considerable number and length of rest periods.

Although he was only found moderately limited in his ability to make simple work related decisions or maintain an ordinary routine without special supervision, his level of concentration was assessed as markedly limited when he had to work with others, comply with a schedule and complete a work day and a work week.  Again, he was found moderately limited in his ability to interact with the general public and to ask simple questions but the assessment was found to be markedly limited when it came to accepting instructions and responding to criticism from supervisors or getting along with coworkers without distracting them or exhibiting behavioral extremes.  He was also found to be markedly limited in his response to changes in the work setting and ability to set goals or make plans independently. Dr. Marrero concluded that "based on his clinical findings, at the present time claimant Madera did not possess the functional capacity to be in a competitive work setting and to complete a normal work day without interruptions."

The medical evidence includes reports of sustained mental health treatment at the APS Clinics from July 2011 to October 2012.  During this period he was prescribed medication such as Haldol, Depakote, Paxil and Ativan, without interruption.

The record reflects an emergency visit and five-day hospitalization in June 2012 at the Hospital Metropolitano in Ponce with a diagnosis of major depressive disorder with psychiatric features.  A progress note of the

APS Clinics at page 615 of the Administrative Record (Exhibit 26F) reflects that on September 26, 2013 Mr. Madera was instructed to call 9-1-1 or to visit the nearest emergency room in case of an emergency including suicidal or homicidal ideas.

Dr. Armando Caro, a psychiatrist consultant examiner to which claimant was referred by the Social Security Administration for a mental evaluation, was also discarded by the ALJ. He evaluated claimant on November 28, 2013. During the mental status exam conducted, he found the claimant's mood was very anxious, he had partial delusions, was oriented in the three spheres, his concentration, short-term memory and abstract thinking were impaired and his judgment and insight were poor. He reported a GAF of 50-55 and a diagnostic impression of post-traumatic stress disorder and severe major depressive disorder and commented the following: "The claimant's capacity for social interaction is impaired based on the patient's interaction with the interviewer. The claimant has no capacity to handle funds. His prognosis is poor." Exhibit 15F; A.R. p. 575.

A review of the ALJ's reasoning, specifically at pages 22 to 24, reflects that the examiner afforded "little consideration" to the medical findings and treatment records of Dr. Brignoni, treatment psychiatrist, Dr. Marrero, treating psychologist, and Dr. Caro, the psychiatrist consultant to whom the S.S.A. referred claimant for a mental status evaluation on January 28, 2013. What the ALJ actually did was to discard the diagnosis of major depressive disorder with psychotic features made by Drs. Brignoni and Marrero and the diagnosis of Dr. Caro of PTSD and severe major recurrent depression and the determination of a poor prognosis. In doing this, the ALJ reached conclusions

such as that Dr. Brignoni's treatment notes do not validate his diagnosis of a severe recurrent major depression with psychotic features. He comments that Dr. Brignoni's report is internally inconsistent. Similarly, as to Dr. Marrero, he concludes that his medical opinion was not consistent with the medical record as a whole and nitpicks details of Dr. Marrero's mental residual functional capacity assessment to undermine Marrero's opinion that based on his clinical findings claimant did not possess the functional capacity to be in a competitive work setting and complete a normal work day without interruptions. See Functional Capacity Assessment, Exhibit 24F, p. 3.

Dr. Caro's opinion was also rejected by the ALJ. The reason given was that "in February 2013 the claimant attended alone to his consultative mental evaluation with Dr. Nylma E. Rosado Villanueva and he was the sole informant to Dr. Rosado-Villanueva." The unsupported inference is that because claimant attended Dr. Caro's office accompanied by his wife, she somehow meddled in the information provided to Dr. Caro.

In short, the ALJ did what he is barred from doing. He "arbitrarily substitute[d] his own judgment for competent medical evidence." Pietrunti v. Director, Office of Workers' Compensation Program, 119 F.3d 1035, 1042( (2nd Cir. 1997) (quoting McBrayer v. Secretary of Health and Human Services, 712 F.2d 795, 798 (2d Cir. 1983). "An ALJ is nonetheless bound by the expert opinion of a treating physician as to the existence of a disability "unless contradicted by substantial evidence to the contrary." Pientrunti, supra (quoting Alston V. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990). The diagnoses of the treating psychiatrist and psychologist were corroborated by the consultant psychiatrist, Dr. Caro, to whom the S.S.A. referred claimant for an

evaluation. There is no medical evidence to contradict the opinion of the treating mental health doctors. As a matter of fact, the medical findings of all three physicians, the treating doctors and the consulting psychiatrist, as to claimant's mental disorder coincide. The ALJ has only provided conclusions of his own to reject the opinions of the treating psychiatrist, treating psychologist and the psychiatrist consultant examiner.

This is a flawed decision by an examining officer who, on the one hand, limits claimant to work where he has no contact with humans and simultaneously discards the following activities as markedly limited over a normal work day and work week. The activities which Dr. Héctor J. Marrero indicated as markedly limited in the Mental Residual Functional Capacity Assessment of claimant (Exhibit 24F, pp. 1-2) include:

- The ability to work in coordination with or proximity to others without being distracted by them;
- The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;
- The ability to accept instructions and respond appropriately to criticism from supervisors;
- The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and
- "Madera does not possess the functional capacity to be in a competitive work setting and complete a normal work day without interruptions." Exhibit 24F, p. 3.

CIVIL 15-2343CCC                8

    This extreme limitation to work without human contact with others is a validation of Dr. Marrero's assessment on claimant's marked limitation in the work setting in his interaction with others, <u>i.e.</u> coworkers or supervisors, despite the ALJ's rejection of his opinion.

    For the reasons stated, the Court finds that the decision of the ALJ that claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act is not supported by substantial evidence in the record and is, therefore, REVERSED.

    SO ORDERED.

    At San Juan, Puerto Rico, on May 16, 2018.

S/CARMEN CONSUELO CEREZO<br>United States District Judge